NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD BETTS, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 06-cv-1285 (DMC) |
| | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY | : | |
| | : | |
| Defendants. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiff Edward Betts' ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits and Supplemental Security Income Benefits ("Social Security Benefits"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled from December 9, 1990, his stated disability onset, through December 31, 1995. Accordingly, the Commissioner's decision is affirmed.

I.   **BACKGROUND**

A.   **Procedural Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on December 16, 1991 alleging a disability onset date of December 10, 1991.   Pl.'s Br. 1-3.   His claims were denied

initially and again upon reconsideration.  Id.  Thereafter, Plaintiff filed for a hearing before an Administrative Law Judge ( "ALJ").  Id.  In a hearing decision issued on July 20, 1993 the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  Id.   A review of the hearing was requested by Plaintiff's attorney which was denied by action of the Appeals Council on October 28, 1993.  Id.  Subsequently, Plaintiff filed a complaint in the United States District Court.  Id.

The Honorable Harold A. Ackerman vacated and remanded the Secretary's decision on August 7, 1995.  Id.  The matter was then remanded by the Appeals Council on September 20, 1995. Pl.'s Br. 1-3.  During the pendency of this matter, Plaintiff filed an application for Social Security Benefits on September 28, 1994, alleging a disability onset date of December 9 1990.  Id.  These applications were denied initially and upon reconsideration.  Id.  In a subsequent hearing held on February 27, 1997, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  Id.  Plaintiff's attorney requested a review of that hearing; however, that request was denied by action of the Appeals Council on April 24, 1998.  Id.   Subsequently, Plaintiff again filed a complaint in the United States District Court for the District of New Jersey.  Id.

This matter was remanded by consent order on December 22, 1998.  Id.   The Appeals Council remanded the matter on March 6, 1999.  Id.  A hearing was held on June 15, 1999.  Id.  On October 13, 1999, the ALJ  found that  Plaintiff was not disabled within the meaning of the Social Security Act.  Id.  Plaintiff's request for a  review of the hearing was denied by action of the Appeals Council on June 24, 2003.  Id.  For the third time,  Plaintiff filed a complaint in the United States District Court for the District of New Jersey.  Id.

The matter was remanded by Consent Order on December 29, 2003.  Id.  The Appeals Council remanded this matter on February 26, 2004.  Id.  A hearing was held on September 28, 2004

and a supplemental hearing was held on April 15, 2005.  Id.  In a hearing decision issued on July 20,

2005 the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and

was not entitled to Supplemental Security Income Benefits prior to June 1, 2002.  Id.  Plaintiff's

request for a  review of the hearing was denied by the Appeals Council on February 10, 2006.  Id.

On March 17, 2006, Plaintiff filed this actionto review a final determination of the Commissioner.

Id.

### B.  Factual Background

A more detailed account of the facts can be found in the transcript at  532-534.  Plaintiff,

born on January 15, 1940, was a 50 year-old male at the alleged time of the disability onset

(December 9, 1990).  Tr. 40.  He has an eighth grade vocational education.  Tr. 41.  Plaintiff worked

as a security guard in his last job.  Tr. 42.  His duties required him to walk for four hours and sit for

four hours during an eight-hour work day.  Tr. 115-116.  He was not required to bend, reach, lift or

carry objects.  Tr. 116.  He claimed he was unable to work due to lower back pain, lumbar

radiculopathy, tinnitus, hypertension, headaches, dizzy spells, poor vision, diabetes, mental

impairments, a pulmonary impairment, a cardiac condition, arthritis and nerve palsy.  Tr. 110; Pl.'s

Br. at 22.  Plaintiff alleged a complete inability to perform work-related activities.  Tr. 114, 414.

He indicated that he was able to drive, cook, shop, watch television, visit with his family, travel

alone, handle money, clean, and do laundry.  Tr. 114, 414.  The ALJ found that medical records,

expert testimony and other trial records do not indicate that the Plaintiff had any impairment or

combination of impairments that were severe enough to qualify him as "disabled" within the

meaning of the Social Security Act during December 1990-1995, the time for which he seeks the

Social Security Benefits.  Tr. 532-548.

The transcript indicates that there was no imaging study showing a spine disorder, definite muscle weakness or atrophy in the lower extremities, asymmetry of the lower extremity reflexes or sensory deficit in the lower extremities.  Tr. 534.  Additionally, there is no evidence of fine movements being impacted or evidence showing pulmonary deficits.  Tr. 538.  Plaintiff was diagnosed with Diabetes and Hypertension.; however, his  blood sugar levels were normal to mildly elevated from December 1990 through December 1992 and his hemoglobin A1C was within the normal range in December 1992. Tr. 535, 536. On the few subsequent occasions for which they were provided, his blood sugar readings were moderately elevated.   Tr. 536.  There is no evidence of diabetic peripheral neuropathy, acidosis or retinopathy.  Tr. 534.  The blood pressure readings were generally only mildly elevated and occasionally rose moderately.  Tr. 535.  Further, there is no indication of heart failure. Tr. 534.  The EKGs did not show any specifically ischemic changes.  Tr. 535.  The March 1996 coronary arteriography showed nonocclusive coronary artery disease, while left ventriculogram showed only mild  hypokinesia of the anterior wall with an ejection fraction of approximately 55%.  Tr. 535.  Subsequently, the cardiologist recommended only an aspirin regimen. Tr. 452.

Dr. Matthews, an ear specialist, who treated Plaintiff for tinnitus and hearing loss opined in August 1992 that Plaintiff was able to work despite his hearing loss. Tr. 207, 543.  Dr. Matthews' only suggested limitation was that Plaintiff should not work in a noisy environment and should avoid stressful occupations due to the tinnitus.  Tr. 207.  Further, the ear specialist noted that the tinnitus had improved with medication as of July 1992.  Tr. 208.  Audimetric testing in April 1992 and January 1995 showed bilateral hearing loss with elevated average threshold sensitivity for air

4

conduction ranging from 50-60 dB.  Tr. 538.  In 1995 there was an unexplained shift to a moderate conductive hearing loss.  In any case, on both dates, speech discrimination ranged from 92-96%, which was considered normal, though hearing aids and surgical middle ear exploration for possible correction of otosclerosis were recommended.  Tr. 538.  Air conducted speech discrimination skills were excellent at amplified levels bilaterally, while bone conducted (unmasked) speech discrimination skills were excellent at a soft conversational level of 36 dBHL. Tr. 538.  The results were considered consistent with ossicular fixation such as otoscelrosis.  Tr. 538.  The recommendations were for medical-surgical intervention and, if not indicated, use of hearing aids (Exhibit B-25).  Tr. 538. Plaintiff delayed in obtaining hearing aids for at least several months after the recommendation was made.  Tr. 538.  In 1993 Plaintiff testified that he had hearing aids, but that they did not help him much, were perhaps damaged inside and aggravated some of the ringing in his ears.  Tr. 538.   The claimant stated in January 1995 that he had been fitted several times with hearing aids but was not wearing a hearing aid.  Tr. 538.   There is no indication that the claimant has undergone surgical evaluation concerning the possible ossicular fixation.   Tr. 538.  In 1986, Plaintiff suffered a tear gland injury of the left eye and had surgery to repair it in 1990.  Tr. 539.   Plaintiff has not had any documented treatment relating to this condition since the surgery.  Tr. 540.  Even before the surgery, Plaintiff managed to work despite his chronic eye discomfort.  Furthermore, in May 1992, Dr. Neigel, who evaluated the Plaintiff's eyes,  reported that Plaintiff  had a slight eyelid weakness and his uncorrected visual acuity was 20/20 in both eyes.  Tr. 540.

Plaintiff also had an extensive history of alcohol consumption, which dated back to 1981, based upon the history he provided during consultative mental examinations in 1995. Tr. 540. In the

January 1995 psychiatric examination of Plaintiff, he spoke very circumstantially, made  fair eye contact, had a somewhat anxious mood and affect, exhibited poor attention and concentration, seemed to have difficulty comprehending questions and needed time to answer them, and had fair memory. Tr. 541.  Plaintiff was diagnosed with organic brain syndrome secondary to drinking.  Tr. 541 However, the episode(s) of significant effects upon the claimant's ability to perform work-related activities resulting from alcohol consumption did not last for at least twelve consecutive months and were not expected to result in death, in spite of any ongoing alcohol consumption and/or irreversible organic brain damage.  Tr. 541.

Plaintiff's verbal IQ score of 78, a performance score of 83 and a full scale IQ score of 79 placed him in the dull normal range of intellectual functioning.  Tr. 541.  Plaintiff stated that he watched sports and game shows on television for about six hours of each 24 hour period, read for an hour a day and visited with friends and/or relatives two or three times a week for up to an hour at a time.  Tr. 547.  Plaintiff indicated that he could read, write and handle money, although he had difficulty doing more complex mathematics.  In April 1992, he was usually driving  alone.  Tr. 547. In March 1995, he acknowledged that he could take transportation independently and perform routine tasks.  At the hospital in March 1996, he reported that he was independent in activities of daily living. Tr. 547.

The vocational expert at the supplemental hearing testified, in response to hypothetical situations posed by the ALJ, that the security guard occupation was consistent with a light residual functional capacity with inability to hear sounds at or below the level of a whisper.  Tr. 548, 578. There is no contradictory expert opinion in the record.  The claimant's physical capabilities equated

6

to substantially the full range of light work (20 CFR §§404.1567 (b) and 416.967 (b); Social Security Ruling 83-10). Tr. 548. Based on the claimant's descriptions, the inspections he performed as a security guard were, at least primarily visual and manual. His security guard job was essentially routine and repetitive. Tr. 548. It was not routinely and inherently highly stressful, as he worked relatively independently and did not apprehend intruders. Furthermore, there was no concentrated exposure to high noise levels. Tr. 548.

After reviewing the available evidence, the ALJ found Plaintiff was not disabled, stating that "the claimant's allegations concerning the intensity and persistence of his symptoms, and their impact upon his ability to perform work-related activities, considerably overstated" and furthermore "nothing about the claimant's residual functional capacity for the period at issue was inconsistent with the job requirements of the claimant's past relevant work as he described it" Tr. 547-48. The ALJ further stated, "the claimant was capable of returning to his past relevant work, and was not under a "disability," as defined in the Act, at any time from December 9, 1990 until June 1, 2002." Tr. 548.

The ALJ found Plaintiff's residual functional capacity, considering his combination of physical and mental impairments, was generally to lift and/or carry up to 20 pounds occasionally; lift and/or carry up to 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; do occasional climbing, balancing, stooping, kneeling, crouching or crawling; perform routine, repetitive tasks; and perform all other basic work-related activities except for hearing sounds at or below the level of a whisper, having concentrated exposure to noisy environments or performing occupations that routinely and inherently involved high stress levels. Tr. 548.

7

In addition, the ALJ made the following findings:

1. The Plaintiff was insured for a period of disability and disability insurance benefits on December 9, 1990, the date that he identified as the one on which he came under a "disability," and his insured status continued through December 31,1995.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The medical evidence establishes that, from December 9, 1990 until June 1, 2002, the claimant had hypertension, pulmonary changes, rib damage, left shoulder deformity, lumbar strain and diabetes mellitus, which were "severe" as the term is defined in the Social Security context (20 CFR §§ 404.1521, 404.1520(b), 416.920(b)).   The claimant also had a host of other documented medical impairments enumerated in the body of this decision, including hearing loss, tinnitus, cardiac abnormalities, alcoholism, dull normal intellectual functioning and at least partially reversible organic brain damage, which did not necessarily affect his ability to perform basic work-related activities significantly for at least 12 consecutive months and were not expected to result in death.

4. The claimant's medically determinable impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 while satisfying the duration component of the "disability" definition.

5. While the claimant's medically determinable impairments could reasonably have been expected to produce some tiredness, shortness of breath, dizzy spells, lightheadedness, urinary frequency, right side pain, lower back pain, shoulder pain, ringing in the ears, hearing loss, headaches, sensitivity to light, blurring of vision and nervousness, the claimant's statements regarding the intensity and persistence of his symptoms, and the resulting functional limitations, cannot reasonably be accepted as consistent with the evidence as a whole.   There was no documented medically determinable impairment that could reasonably have been expected to cause the alleged heart palpitations, knee pain or depression.

6. The undersigned has carefully considered all of the medical opinions in the record (20 CFR §§ 404.1527 and 416.927).

7. The claimant's residual functional capacity during the period issue was generally to lift and/or carry up to 20 pounds occasionally; lift and /or carry up to 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; do occasional climbing, balancing, stooping, kneeling, crouching or crawling; perform routine, repetitive tasks; and perform all other basic work-related activities except for hearing sounds at or below the level of a whisper, having concentrated exposure to noisy environments or performing occupations that routinely and inherently involved high stress levels.

8. The claimant's past relevant work as a security guard did not require the performance of work-related activities precluded by the above residual functional capacity.

9. The claimant's medically determinable impairments did not prevent the claimant from

performing his past relevant work during the period issue.

10.     The claimant was not under a "disability" as defined in the Social Security Act, from December 9, 1990 until June 1, 2002 (20 CFR §§404.1520(f) and 416.920(f)).

Tr. 549, 550.

Plaintiff now raises three arguments in support of his appeal: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ erred in not fully considering Plaintiff's non-exertional impairments when making his decision; (3) the ALJ erred as a matter of law in finding that Plaintiff could return to his past relevant work as a Security Guard. Pl. Br. at 21-34. In response, the Commissioner contends the ALJ's decision is supported by substantial evidence and should not be disturbed.

## II.     STANDARD OF REVIEW

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v.

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  See Stewart v. Sec'y. of HEW, 714 F.2d 287, 290 (3d Cir. 1983).  "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001).  Thus, substantial evidence may be slightly less than a preponderance.  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality."  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "[The reviewing court] need[s] from the ALJ not only

10

an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A.    The Five-Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Under the Social Security Act ("Act"), a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a & 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the

11

claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of the alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  Id.  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  Id.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  Yuckert, 482 U.S. at 146-47 n.5.

### B.      The Record Must Provide Objective Medical Evidence

Under the Act, proof of a disability requires objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the

existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."). Furthermore, S.S.R. 96-7p provides that

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); Green v. Schweiker, 749 F.2d 1066,

1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability.")

**III.    DISCUSSION**

**A.    Step One: Whether Claimant Has Engaged in Any Substantial Gainful Work Activity**

As to the first step, substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 CFR § 404.1523(a). Here the ALJ found that Plaintiff has not performed any substantial gainful activity since December 9, 1990. Tr. 549. This finding is not disputed by the parties. Accordingly, the ALJ's findings regarding step one are upheld.

**B.    Step Two: Whether Impairment is Severe**

As to the second step, the ALJ found that from December 9, 1990 until June 1, 2002, the claimant had hypertension, pulmonary changes, rib damage, left shoulder deformity, lumbar strain and diabetes mellitus, which were "severe" as the term is defined in the Social Security context (20 CFR §§ 404.1521, 404.1520(b), 416.921 and 416.920(b)). Tr. 549. This finding is not disputed by the parties.

The ALJ also found that Plaintiff had a host of other "non severe" documented medical impairments including hearing loss, tinnitus, cardiac abnormalities, alcoholism, dull normal intellectual functioning and at least partially reversible organic brain damage, which did not necessarily affect his ability to perform basic work-related activities significantly for at least 12 consecutive months and were not expected to result in death. Tr. 549. The evidence which supports the ALJ's finding is comprised of the objective medical findings and the medical opinions of record. Tr. 534-549. Thus, Plaintiff failed to meet his burden of demonstrating that the above alleged

14

conditions were "severe" impairments under the Act.  Tr.110; Pl.'s Br. at 22-23, Pl.'s Resp Br. at 1-3.  An impairment is "not severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities.  20 C.F.R. § 404.1521(a); SSR 85-28.  See Bowen v. Yuckert, 482 U.S. 137 (1987).  Basic work activities relate to the ability and aptitude to perform most jobs and physical functions that jobs require such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying and handling.  20 C.F.R. § 404.1521(b)(1).  Basic work activities also include mental functions, such as understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b)(2)-(6).

Additionally, for disability insurance benefits purposes, Plaintiff must establish that he became disabled prior to the expiration of his inured status on December 31, 1995.  See 42 U.S.C. § 423(a)(1)(A) and (c)(1); 20 C.F.R. § 404.131; Kane v. Heckler, 776 F.2d 1130,1131 n.1(3d Cir. 1985); Manzo v. Sullivan, 784 F. Supp. 1152, 1156 (D.N.J. 1991).  "While evidence of [plaintiff's] condition prior to the onset date and after the insured date is to be considered by the ALJ . . . , the period between onset of disability and expiration of insured status is the focus of the inquiry."  Ward v. Shalala, 898 F. Supp. 261, 263 (D. De. 1995).  Evidence that an impairment became disabling after the expiration of the individual's insured status does not entitle the individual to disability insurance benefits, even though the impairment may have existed before the individual's insured status expired.  See Manzo, 784 F. Supp at 1156.

Here, Plaintiff failed to meet his burden of proving that all his  alleged conditions were "severe" impairments under the Act.  Additionally, substantial evidence supports the ALJ's findings

15

of "non severe" impairments.  Accordingly, the ALJ's findings regarding step two are upheld.

**C.     Step Three: Whether Impairment is Listed in Appendix 1 or Equal to a Listed Impairment**

The ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, regulations No. 4 while satisfying the duration component of the "disability" definition.  Tr. 549.  Plaintiff argues that the ALJ improperly evaluated the medical evidence in determining that his impairments did not match or equal a listed impairment.  Specifically, Plaintiff contends that the ALJ failed to give proper credence to his complaints, ignored the findings of Plaintiff's treating and examining physicians and substituted his own opinion.  Pl. Br. at 22.  The Commissioner contends that substantial evidence supports the ALJ's findings and further notes that the ALJ correctly considered each medical opinion of Plaintiff's treating and examining physicians.  Def. Br. at 7.

In his decision, the ALJ found that the medical evidence indicated that Plaintiff's impairment was "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix I, Subpart P, Regulations No. 4."  Tr. 534.   The ALJ analyzed Listings §§ 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 3.02 (Chronic pulmonary insufficiency), 4.03 (Hypertensive cardiovascular disease), and 9.08 (Diabetes mellitus), and found that Plaintiff's impairments were not of Listing-level severity.  Tr. 534, 549.

Plaintiff claims that in making this finding, the ALJ failed to consider the Plaintiff's complaints and his treating physicians' opinions.   The Court disagrees with Plaintiff's position.  Although Plaintiff challenges the sufficiency of the ALJ's listings discussion and states "[Plaintiff's]

16

individual impairments when taken in combination surely equal the Listings," he fails to identify any evidence that he met or equaled any listings.  Further, it is his burden to prove that his impairments were of Listing-level severity.  See Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000) (citing Bowen v. Yuckert, U.S.137, 146 n.5 (1987)); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  Plaintiff does not even identify which listing he may have met.  See Pl. Br. at 25-27.  The Court agrees with the Commissioner that substantial evidence supports the ALJ's findings that Plaintiff's impairments did not meet or equal a listing.  Furthermore, the record indicates that the ALJ noted Plaintiff's complaints and considered all the available medical opinions and other evidence to corroborate them as required by law.

In his decision, the ALJ found that Plaintiff's hearing loss, tinnitus, cardiac abnormalities, alcoholism, dull normal intellectual functioning and partially reversible organic brain damage were not severe impairments under the Act.  Tr. 537-43, 549.  With regard to Plaintiff's tinnitus and hearing loss, the ALJ noted that Dr. Matthews, an ear specialist who treated Plaintiff for several months, opined in August 1992 that Plaintiff was able to work in most situations despite his hearing loss.  Tr. 207, 543.  Dr. Matthews only limitation was that Plaintiff not work in a noisy environment and should avoid a stressful occupation due to the tinnitus.   Further, Dr. Matthews noted that the tinnitus had improved with medication as of July 1992.  While Dr. Capasso and Dr. Velasco opined that Plaintiff was disabled due to tinnitus and hearing loss, the ALJ correctly noted that whether the claimant is disabled is the ultimate issue in this case and it is reserved for the ALJ to decide.  It is a legal question, not a medical one, so it is outside the expertise of the doctor.  (20 CFR §§ 404.1527 (e) and 416. 927 (e)).

17

However, contrary to Plaintiff's assertion, in making this decision the ALJ considered the medical findings of Dr. Velasco and Dr. Capasso.  The ALJ noted that Dr. Velasco cited minimal objective evidence in her reports.  Tr. 542.  The ALJ also noted that Dr. Velasco considered diagnoses that were inconsistent with the objective findings by the other medical sources as of the dates of the opinions, including anxiety reaction and left eye blindness.  Tr. 542.  Furthermore, the ALJ pointed out that Dr. Velasco, compromised her reliability by reporting in January 1992 that Plaintiff had paralysis of his right eyelid, when in fact, he had slight weakness of his left eyelid based on his history and the observations of the other examiners.  Tr. 542.  The ALJ also explained that Dr. Capasso's opinion is based heavily on Plaintiff's subjective complaints, and while tinnitus is "inherently self reporting," Dr. Capasso's characterization of Plaintiff as "disabled" conflicts with the opinion of Dr. Matthews, who is also an ear specialist, that the Plaintiff "should be able to function in most work situations relative to his hearing loss disability." Tr. 207.  Plaintiff did not bring forth any reason explaining the differing opinion of the two Doctors.  Moreover, Dr. Matthews' opinion is consistent with the evidence as a whole.  Audiometric testing in April 1992 and January 1995 showed bilateral hearing loss with elevated average threshold sensitivity for air conduction ranging from 50-60 dB.  Tr. 538.

In 1995 there was an unexplained shift to a moderate conductive hearing loss.  In any case, on both dates, speech discrimination ranged from 92-96%, which was considered normal, though hearing aids and surgical middle ear exploration for possible correction of otosclerosis were recommended.  Tr. 538.  Plaintiff delayed in obtaining hearing aids for at least several months after the recommendation was made.  Tr. 538.  In 1993, Plaintiff testified he had hearing aids, but they

did not help him much, were perhaps damaged inside and aggravated the ringing in his ears.  Tr. 538.  The claimant stated in January 1995 that he had been fitted several times with hearing aids but was not wearing any. Tr. 538.  There is no indication that the claimant has undergone surgical evaluation concerning the possible ossicular fixation.   Tr. 538.  Plaintiff failed to bring forth any objective medical evidence corroborating his complaints.

Plaintiff also argues that the ALJ did not fully consider Plaintiff's non-exertional impairments when making his decision.  This argument is not persuasive because while Plaintiff alleges disabling conditions of dull normal intellectual functioning and organic brain syndrome, no physician found that Plaintiff was precluded from working for twelve months or more due to these alleged conditions, or that any of these conditions were expected to result in death.  Indeed, while Dr. Keddis diagnosed  Plaintiff with "organic brain syndrome" and a CT scan of the head revealed "cortical atrophic changes," no physician found that Plaintiff was functionally limited as a result. Tr. 449; Pl.'s Br. at 25.   Consequently, while Plaintiff claims that he was disabled by organic brain syndrome, he fails to offer  evidence showing how this diagnosis supports his claim that he could not perform substantial gainful activity.  Pl.'s Br. at 25.

The burden is upon Plaintiff to show that his impairments were severe enough to satisfy the criteria of a listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  Here, the ALJ made sufficient findings that permit the Court to conduct a meaningful judicial review so there is no need to remand for further development as Plaintiff requests.  The ALJ articulated his findings to support his conclusion that Plaintiff did not satisfy step three.  Accordingly, the ALJ's decision on step three is upheld.

**D.        Step Four: Residual Functional Capacity to Perform Past Relevant Work**

Plaintiff argues that the ALJ erred in finding that Plaintiff had the residual functional capacity to perform a full range of light work.  The Commissioner counters that the ALJ's decision is supported by substantial evidence.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  Id.  A comparison between the claimant's residual functional capacity and the requirements of his past relevant work is necessary to satisfy step four.  20 C.F.R. § 404.1520(e)-(f); Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

In the case at hand, after analyzing all the available evidence, the ALJ wrote:

> Nothing about the claimant's residual functional capacity for the period issue was inconsistent with the job requirements of the claimant's past relevant work as he described it.  The claimant was capable of returning to his past relevant work, and was not under a "disability," as defined in the Act, at any time from December 9, 1990 until June 1, 2002.

Tr. 548.

> The claimant's residual functional capacity, considering his combination of physical and mental impairments, was generally to lift and/or carry up to 20 pounds occasionally; lift and /or carry up to 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; do occasional climbing, balancing, stooping, kneeling, crouching or crawling; perform routine, repetitive tasks; and perform all other basic work-related activities except for hearing sounds at or below the level of a whisper, having concentrated exposure to noisy environments or performing occupations that routinely and inherently involved high stress levels.

Tr. 548.

20

> The vocational expert at the supplemental hearing testified, in response to hypothetical situations posed by the ALJ, that the security guard occupation was consistent with a light residual functional capacity with inability to hear sounds at or below the level of a whisper.

Tr. 548.

> The claimant's physical capabilities equated to substantially the full range of light work (20 CFR §§ 404.1567 (b) and 416.967 (b); Social Security Ruling 83-10). Based on the claimant's descriptions, the inspections he performed as a security guard were, at least primarily, visual and manual.  His security guard job was essentially routine and repetitive.  It was not routinely and inherently highly stressful, as he worked relatively independently and did not apprehend intruders.  Furthermore, there was no concentrated exposure to high noise levels.

Tr. 548.  Despite the above passage, Plaintiff contends the ALJ's findings were not supported by medical evidence and that the ALJ erred as a matter of law in finding that Plaintiff could perform the full range of light work.

In his decision, the ALJ also considered Plaintiff's Work History.  Tr. 548.  Plaintiff reported that his responsibilities were to monitor who came in and out of commercial properties from a booth, patrol the property in a guard vehicle, check doors and open rooms for signs of tampering or unauthorized entry, and make reports and entries in a log book.  These tasks involved occasional walking and/or standing alternating with opportunities to sit, occasional bending and reaching and no significant lifting or carrying.  See Ex 9 and B-14; 1993 Hearing Testimony; Tr. 548.  Here, Plaintiff's description of how he performed his past work as a security guard fits squarely within the requirements of light work.[1]  Indeed, the manner in which Plaintiff performed his past work as a

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered

21

security guard requires less exertion than the actual requirements of light work.

Plaintiff overlooks Dr. Matthews' opinion and argues that "there must be some medical opinion from an examining physician which supports the ALJ's RFC finding." Pl. Br. at 34. The ALJ's decision was supported by the findings of Dr. Matthews, an ear specialist, who found that despite Plaintiff's tinnitus and hearing loss, he was able to work in most situations. Dr. Matthews' only limitation was that Plaintiff not work in a noisy environment and should avoid a stressful occupation. Tr. 207. This opinion was given significant weight by the ALJ because it was consistent with the record. Tr. 546.

Plaintiff also argues that the ALJ in the instant decision erred when he found that Plaintiff could perform his past work because an ALJ in a previous decision found that Plaintiff could not perform his past relevant work. Pl.'s Br. at 33; Tr. 19. However, that previous decision was vacated. Tr. 304-25. Therefore, any administrative findings made in Plaintiff's case by a previous ALJ have no bearing on the instant ALJ decision, which was issued *de novo*.

Furthermore, the ALJ's step four finding is also supported by the testimony of the vocational expert that the security guard occupation was consistent with a light residual functional capacity with inability to hear sounds at or below the level of a whisper. Tr. 548, 578. Plaintiff's counsel did not object to him serving as the impartial vocational expert in this case. Tr. 548. His testimony was consistent with the information contained in the Dictionary of Occupational Titles and Selected

---

capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Characteristics of Occupations.  Furthermore, there is no contradictory expert opinion in the record. Tr. 548.

Consequently, the ALJ properly articulated his findings and how they led him to conclude that Plaintiff's residual functional capacity permitted him to perform his past relevant work. Furthermore, the ALJ's decision with regard to step four is supported by substantial evidence. Accordingly, the ALJ's findings regarding step four are affirmed and Plaintiff is not entitled to benefits.

### E.    Subjective Complaints

Plaintiff further argues that the ALJ failed to give credence to Plaintiff's subjective complaints.  Pl.'s Br. at 22. The Commissioner contends that the ALJ considered Plaintiff's subjective complaints and applied the correct legal standard.

In making his residual functional capacity finding, the ALJ considered Plaintiff's allegations of pain and functional limitations and found that they were not credible to the extent alleged.  Tr. 549.   Plaintiff claimed he cannot work due to low back pain, lumbar radiculopathy, tinnitus, hypertension, headaches, dizzy spells, poor vision, diabetes, mental impairments, a pulmonary impairment, a cardiac condition, arthritis and nerve palsy.  Tr. 110; Pl.'s Br. at 22. However, subjective symptomatology cannot, by itself, be the basis for a finding of disability. Rather, Plaintiff must demonstrate by medical signs or findings the existence of an underlying condition reasonably expected to produce the symptomatology alleged.  42 .U.S.C. §423(d)(5)(A); 20 C.F.R. § 404.1529; SSR 96-7p.

Contrary to Plaintiff's contention that the ALJ substituted his own medical opinion, the

ALJ's decision comports with the weight of the medical evidence. The Commissioner correctly points out that under 20 C.F.R. § 404.1529(c), when a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists. Further, if a plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective evidence alone, the ALJ shall give consideration to other factors, including subjective complaints. 20 C.F.R. § 404.1529(c)(3).

The ALJ determined here that the objective evidence of record did not substantiate Plaintiff's claims to the extent alleged. Because a plaintiff must put forth more than just subjective complaints of pain, the ALJ did not err in giving Plaintiff's subjective complaints minimal weight. Further, the ALJ made specific findings in his decision regarding Plaintiff's credibility. As such, the Court finds that the ALJ's decision to give little weight to Plaintiff's subjective complaints was supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying benefits for Plaintiff.

  S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:         March    28  , 2007
Original:     Clerk's Office
cc:           All Counsel of Record
              File